[No. D055419. Fourth Dist., Div. One. Apr. 29, 2010.]

STEVE HOWARD et al., Plaintiffs and Appellants, v.
COUNTY OF SAN DIEGO, Defendant and Respondent.

**COUNSEL**

Thorsnes Bartolotta McGuire, Vincent Bartolotta, Jr., and Karen R. Frostrom for Plaintiffs and Appellants.

R. S. Radford and Luke A. Wake for Pacific Legal Foundation as Amicus Curiae on behalf of Plaintiffs and Appellants.

John J. Sansone, County Counsel, and Judith A. McDonough, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**NARES, Acting P. J.**—This appeal arises out of the dismissal of plaintiffs Steve Howard and Megan McQuaide's (together, plaintiffs) complaint against the County of San Diego (the County), wherein they alleged the County inversely condemned their property when it allegedly refused to process plans for a metal barn on their property in Campo, California, because its location was in the footprint of a potential road. The County brought a motion for judgment on the pleadings, arguing, among other things, plaintiffs failed to exhaust their administrative remedies. The court granted the motion and dismissed the complaint without prejudice. Thereafter, plaintiffs moved to amend the complaint, alleging they had exhausted their administrative remedies because they unsuccessfully sought a remapping of the proposed road. The County opposed the motion, asserting plaintiffs had still failed to exhaust their administrative remedies because they could have sought an amendment to the County's general plan. The court denied leave to amend and entered judgment in favor of the County.

■ Plaintiffs appeal asserting (1) that all reasonable administrative remedies have been exhausted and (2) that requiring plaintiffs to seek a general plan amendment would be unreasonable. We conclude that the court erred in refusing to grant leave to amend because an issue of fact exists as to whether the County's decision was "final" and whether any further attempt by plaintiffs to exhaust their administrative remedies would be futile. We further conclude that if what plaintiffs seek to accomplish regarding development of their property can only be remedied through a general plan amendment, they have adequately exhausted their administrative remedies because a general plan amendment is a legislative, not administrative, process.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Plaintiffs' Attempt to Obtain Permit for Barn*

Plaintiffs own approximately 40 acres of land in Campo, California (the property). In 2006 plaintiffs applied for a building permit to construct a metal barn on the property. In attempting to obtain a permit from the County, they discovered there was a road planned on the County's circulation element of its general plan. The barn plaintiffs desired to build was situated within the planned road's corridor. They were informed that they could not build the

barn within that corridor as the County did not allow development within the corridor.

## B. *The Instant Litigation*

In May 2008 plaintiffs filed a complaint against their real estate broker, the sellers of the property, the sellers' real estate broker, and their title company, alleging they defrauded them in the sale of the property by not disclosing the planned road through the property. The complaint also named the County, stating causes of action for inverse condemnation and a violation of civil rights under title 42 United States Code section 1983.

In support of their claims against the County, plaintiffs alleged that when they were processing permits for a home and metal barn they desired to build on the property, they were told by the County that a County map showed a future road named La Posta Road going through their property. They were further told that as part of the County's 2020 general plan update, the County was considering construction of La Posta Road. Further, because the metal barn was to be built within the La Posta Road footprint, the County refused to allow construction of the barn at that location.

Plaintiffs alleged that after they discovered the proposed La Posta Road, they engaged in many meetings with County officials. Staff for Dianne Jacob, their county supervisor, told them there was "no way that [t]he La Posta Road planning was going to be moved or modified." Plaintiffs also alleged that in a subsequent meeting with Jacob, she "personally told them that the County would never allow them to build within the road footprint and would never provide compensation for the taking of that footprint. They were left with no alternative but to resort to the court for help. These statements made it plain that any attempt to finalize the permit process would be an expensive act of futility."

Plaintiffs further alleged that the proposed road, if built, would have a devastating effect on their property, including (1) not being able to obtain financing for their proposed home because of uncertainties with the proposed road; and (2) being prevented from developing a major portion of their property because the footprint of the road bisects their property into two parcels, with the proposed road taking up the flattest and most usable portions of the property, leaving them with hills and canyons.

After answering the complaint, the County filed a motion for judgment on the pleadings. The County argued plaintiffs' claims failed as a matter of law because (1) the claims were not ripe because plaintiffs had received no final definitive decision denying them a building permit; (2) plaintiffs failed to exhaust their administrative remedies; and (3) further exhaustion of administrative remedies was not futile. The County requested that the court take judicial notice of the County's issuance of the requested building permit for the barn. That permit showed that it was conditioned upon a "[s]etback 60' from La Posta Truck Trail."

Plaintiffs opposed the motion, arguing (1) the inverse condemnation claim was ripe because the County had conditioned the permit on the barn not being built within the planned road's footprint; and (2) any further attempt to obtain approval of the barn within the proposed road's footprint would be futile.

In September 2008 the court granted the County's motion for judgment on the pleadings on the basis of "[p]laintiffs' failure to exhaust their administrative remedies." The court also granted the County's request for judicial notice. The court dismissed plaintiffs' complaint without prejudice.

Thereafter, plaintiffs attempted to exhaust their administrative remedies further by submitting to the County a "Request for a Modification to a Road Standard and/or to Project Conditions," requesting that the planned road be removed from the circulation element of the County's general plan. The County responded by stating that the planned road could not be removed from the general plan's circulation element through a request for modification. Rather, the County informed plaintiffs they would have to seek a general plan amendment (GPA) to accomplish that goal. The County also informed plaintiffs that if they requested a GPA, they "would be responsible to pay for all processing costs and the preparation of environmental documentation and studies needed to process the proposed GPA." The County also informed plaintiffs that as part of an overall update to the County's general plan the County was proposing that "La Posta Truck Trail be identified as an emergency access road and a portion be designated as a local public road."

Plaintiffs thereafter brought a motion to amend the complaint to add the County back into the action as a defendant. In that motion, plaintiffs argued they had followed the procedure requested by the County to exhaust their administrative remedies and that the denial of their request for modification constituted a complete exhaustion of administrative remedies. Specifically, after the court granted the County's motion for judgment on the pleadings, counsel for plaintiffs met with the County's attorney and asked what needed to be done to exhaust their administrative remedies. The County's attorney

provided plaintiffs' attorneys with the request for modification to a road standard or project conditions form and told them that was the proper procedure to seek to develop their property. The County responded by denying the request and affirmatively stating that La Posta Road was going to be built.

The court denied the motion, finding plaintiffs had not exhausted their administrative remedies. Specifically, the court referenced the County's letter denying plaintiffs' request for modification to a road standard: "In that letter, the County explained that the proper way to remove a road such as La Posta Truck Trail from the General Plan Circulation Element is to seek a General Plan Amendment. [Citation.] There is no evidence that Plaintiffs have attempted to seek a General Plan Amendment."

This timely appeal follows.

## DISCUSSION

### I.   *STANDARD OF REVIEW*

██   Motions for leave to amend are directed to the sound discretion of the judge: "The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading . . . ." (Code Civ. Proc., § 473, subd. (a)(1).) However, the court's discretion will usually be exercised liberally to permit amendment of the pleadings. (See *Nestle v. Santa Monica* (1972) 6 Cal.3d 920, 939 [101 Cal.Rptr. 568, 496 P.2d 480]; *Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 596 [71 Cal.Rptr.2d 657].) The policy favoring amendment is so strong that it is a rare case in which denial of leave to amend can be justified. (*Douglas v. Superior Court* (1989) 215 Cal.App.3d 155, 158 [263 Cal.Rptr. 473].) "Leave to amend should be denied only where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but under substantive law, no liability exists and no amendment would change the result." (*Edwards v. Superior Court* (2001) 93 Cal.App.4th 172, 180 [112 Cal.Rptr.2d 838].)

### II.   *PLAINTIFFS' FAILURE TO REQUEST LEAVE TO AMEND*

The County asserts that plaintiffs' failure to request leave to amend their complaint when they opposed the County's motion for judgment on the pleadings precludes them from amending their complaint to rename the County as a defendant over six months later. This contention is unavailing.

First, the County did not raise this argument in opposition to plaintiffs' motion to amend. Therefore, the County has forfeited this issue on appeal. (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 127 [68 Cal.Rptr.3d 568].)

Moreover, as detailed *ante*, the court granted the County's motion for judgment on the pleadings on the basis that plaintiffs had not exhausted their administrative remedies. Thereafter, plaintiffs allege they took all reasonable and necessary steps to exhaust their administrative remedies and then sought leave to amend the complaint to add the County back in as a defendant. It would make no sense for plaintiffs to request leave to amend in response to the motion for judgment on the pleadings before they exhausted their administrative remedies. Any such request would be met with the same defense as the County raised in its motion for judgment on the pleadings, and leave to amend would have been denied. Rather, because the court dismissed the County without prejudice, plaintiffs properly rejoined it as a party by a subsequent amended pleading. (See *Kuperman v. Great Republic Life Ins. Co.* (1987) 195 Cal.App.3d 943, 947 [241 Cal.Rptr. 187].)

### III. FAILURE TO PROVIDE PROPOSED AMENDED PLEADING

The County asserts that the court could have denied leave to amend based upon the fact that plaintiffs did not provide a proposed amended complaint with their motion.

However, the County never objected to that defect in plaintiffs' motion before the trial court and has therefore forfeited that issue on appeal. (*Mokler v. County of Orange, supra*, 157 Cal.App.4th at p. 131.) This is particularly true here where the technical defect in plaintiffs' motion, if brought to plaintiffs' attention, could have been easily remedied. Upon remand, however, the court may order plaintiffs to filed an amended pleading containing the facts showing their attempts to exhaust their administrative remedies as detailed in their motion to amend.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

#### A. Applicable Law

##### 1. Final administrative decision

To determine whether an unconstitutional taking has occurred, California courts are guided by decisions of the United States Supreme Court. (See, e.g., *Del Oro Hills v. City of Oceanside* (1995) 31 Cal.App.4th 1060,

1073–1075 [37 Cal.Rptr.2d 677]; *Guinnane v. City and County of San Francisco* (1987) 197 Cal.App.3d 862, 867–870 [241 Cal.Rptr. 787].)

■ "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." (*Williamson Planning Comm'n v. Hamilton Bank* (1985) 473 U.S. 172, 186 [87 L.Ed.2d 126, 139, 105 S.Ct. 3108].) This is because until there has been a "final, definitive position" as to how the regulations will be applied to the land, a court cannot determine the extent of the economic impact, a factor that bears on the question whether a compensable taking has occurred. (*Id.* at p. 191.) The exhaustion requirement also affords the governmental entity the opportunity to rescind or modify the ordinance or regulation or to exempt the property from the allegedly invalid restriction once it has been judicially determined the proposed application of the regulation will constitute a compensable taking. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 13 [32 Cal.Rptr.2d 244, 876 P.2d 1043].) This requirement is jurisdictional and not a matter of judicial discretion. (*Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 589 [96 Cal.Rptr.2d 880].)

"While a landowner must give a land-use authority an opportunity to exercise its discretion, once it becomes clear that the agency lacks the discretion to permit any development, *or the permissible uses of the property are known to a reasonable degree of certainty*, a takings claim is likely to have ripened." (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 620 [150 L.Ed.2d 592, 121 S.Ct. 2448, 2459], italics added.)

### 2. *Futility exception*

■ Closely related to the "final decision" rule is the "futility" exception. The failure to pursue administrative remedies does not bar judicial relief where the administrative remedy is inadequate or unavailable, or where it would be futile to pursue the remedy. (*Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 936 [16 Cal.Rptr.3d 849, 94 P.3d 1055].) In order to invoke the futility exception, a plaintiff must show " 'that the [agency] has declared what its ruling will be on a particular case.' " (*Ibid.*) A plaintiff need not pursue administrative remedies where the agency's decision is certain to be adverse. (*Doster v. County of San Diego* (1988) 203 Cal.App.3d 257, 261 [251 Cal.Rptr. 507].)

Thus, in *Ogo Associates v. City of Torrance* (1974) 37 Cal.App.3d 830 [112 Cal.Rptr. 761], the defendant city enacted ordinances declaring a moratorium on building permits and a permanent rezoning ordinance preventing the

plaintiff's contemplated land use. The plaintiff filed suit, challenging the permanent ordinance, and the city in response asserted the plaintiff should have sought an application for a variance. The Court of Appeal held that because it was clear the city would not have granted a variance, the plaintiff was not required to pursue that remedy: "To require appellants to apply to the city council for a variance on behalf of this project would be to require them to pump oil from a dry hole." (*Id.* at p. 834.)

■ The question of whether it would be futile to pursue additional administrative remedies may be a question of fact. (*Twain Harte Associates, Ltd. v. County of Tuolumne* (1990) 217 Cal.App.3d 71, 91 [265 Cal.Rptr. 737].)

### B. *Analysis*

*A question of fact exists on the "final decision" rule and "futility" exception*

Here, in reviewing the court's failure to grant leave to amend, because we are at the pleading stage, we must accept plaintiffs' allegations as true and give them a liberal construction. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515–516 [101 Cal.Rptr.2d 470, 12 P.3d 720].) Under this standard, we cannot say that as a matter of law plaintiffs have failed to exhaust their administrative remedies. At each step in their attempt to build within the La Posta Road footprint, the County has told plaintiffs that their actions were futile. Based specifically upon advice from the County's attorney, they submitted a request for modification to a road standard or project conditions. In response, the County informed them they needed to seek a GPA. However, in that same letter, the County also informed them that it would be preserving the proposed La Posta Road in its entirety as an "emergency access road" and preserving part of it as a local public road. These facts create a triable issue of fact as to whether the County's decision was final and whether any further attempts to exhaust their administrative remedies would be futile. This issue is not properly decided at the pleading stage and therefore the court erred in denying plaintiffs leave to amend. (*Edwards v. Superior Court, supra,* 93 Cal.App.4th at p. 180.) Further, as we shall discuss, *post,* because a GPA is a legislative, not an administrative, process, plaintiffs were not required to seek a GPA prior to instituting legal action.

### C. *General Plan Amendment*

■ Legislative actions are political in nature, "declar[ing] a public purpose and mak[ing] provisions for the ways and means of its accomplishment." (*Fishman v. City of Palo Alto* (1978) 86 Cal.App.3d 506, 509 [150

Cal.Rptr. 326].) In contrast, administrative or adjudicative actions apply law that already exists to determine "specific rights based upon specific facts ascertained from evidence adduced at a hearing." (*City of Rancho Palos Verdes v. City Council* (1976) 59 Cal.App.3d 869, 883 [129 Cal.Rptr. 173], disapproved on another ground in *Heist v. County of Colusa* (1984) 163 Cal.App.3d 841, 846 [213 Cal.Rptr. 278].)

The amendment of a general plan is a legislative, not an administrative, action. (*Yost v. Thomas* (1984) 36 Cal.3d 561, 571 [205 Cal.Rptr. 801, 685 P.2d 1152].) Thus, plaintiffs were not required to seek a GPA in order to adequately exhaust their administrative remedies.

While the County recognizes that a GPA is a legislative act, it argues it has provided an administrative process for seeking such relief. However, regardless of the *process* by which landowners may seek a GPA, the ultimate decision is a legislative one to be voted on, after notice and a hearing, by the County's Board of Supervisors. (Gov. Code, §§ 65355–65356.) That is not an administrative remedy.

It is unclear from the record whether a GPA was required to achieve the relief plaintiffs sought. According to plaintiffs, they submitted a form County officials told them was appropriate to request removal of the proposed road from the County's circulation element of the general plan. However, in response, the County asserted such relief could only be accomplished through a GPA. Accordingly, we conclude that to the extent a GPA was required to achieve the results plaintiffs sought with regard to the development of their property, they were not required to seek a GPA prior to instituting suit. Therefore, the court erred in denying plaintiffs leave to amend on this basis as well.

## V. *FAILURE TO SEEK ADMINISTRATIVE MANDAMUS*

The County asserts that even if plaintiffs could show they have exhausted their administrative remedies, their complaint is defective because they failed to file a petition for administrative mandamus to determine if the County's actions amounted to a "taking." This contention is unavailing.

The County did not raise this issue before the trial court. Accordingly, it has been forfeited. (*Mokler v. County of Orange, supra,* 157 Cal.App.4th at p. 131.)

## DISPOSITION

The judgment is reversed, and the matter is remanded with directions that the court grant plaintiffs leave to amend their complaint. Costs on appeal to plaintiffs.

Haller, J., and McIntyre, J., concurred.